Thomas H. Barnard
Bar No. 20982
tbarnard@bakerdonelson.com
Jennifer L. Curry
*admitted pro hac vice*
jcurry@bakerdonelson.com
Chaitra Gowda
*admitted pro hac vice*
cgowda@bakerdonelson.com
P:  410-862-1183
F:  410-547-0699

*Counsel to Defendant Association of*
*Universities for Research in Astronomy*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

|  |  |
| --- | --- |
| Michael Westfall, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 4:22-cv-00161-RM |
| v. | ) Judge Rosemary Marquez |
| | ) |
| Association of Universities for | ) |
| Research in Astronomy | ) |
| | ) **Association of Universities for** |
| Defendant. | ) **Research in Astronomy's Motion** |
| | ) **to Compel Discovery Responses** |
| | ) **and Document Production from** |
| | ) **Michael Westfall** |
| | ) |

Defendant, Association of Universities for Research in Astronomy ("Defendant" or "AURA"), by and through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 37(a), hereby files this Motion to Compel Plaintiff Michael Westfall ("Plaintiff") to respond to Defendant's First Set of Interrogatories ("Interrogatories") and Defendant's First Request for Production of Documents and Things ("Document Requests") (collectively, the "Discovery Requests").  In support of this Motion, Defendant states as follows.

1

2

**<u>INTRODUCTION</u>**

3

4            Plaintiff's egregious antics since initially filing his Complaint in the United States District

5    Court for Hawaii are quite telling and demonstrate the lack of genuine interest in participating in

6    the judicial process. As background, after Plaintiff filed his Complaint in Hawaii – a venue in which

7    he did not work or live, Defendant raised concerns about proper venue and requested that the parties

8    jointly transfer the litigation – as required by Hawaii's local rules. Plaintiff refused, leading

9    Defendant to file its motion requesting the Hawaii Court dismiss the Complaint or, in the

10   alternative, transfer venue. *See* ECF No. 15. For the next almost 4 months, counsel for Plaintiff

11   relayed to Defendant's counsel *and the Hawaii Court* that he intended to resolve the transfer issues

12   without judicial intervention but would not give a definitive response. After months of playing

13   games, being largely non-responsive for weeks and even months at times, and wasting both the

14   Court's and counsel's resources, Plaintiff changed his mind without explanation to file an

15   opposition to Defendant's motion. *See* ECF No. 36. The Hawaii Court ultimately agreed with

16   Defendant that Hawaii was not the proper venue and transferred the case to Arizona based on

17   Plaintiff's counsel's choice.[1]

18

19           Upon receiving this case, this Court issued its Scheduling Order on June 23, 2022, *see* ECF

20   No. 51. Defendant promptly served the Discovery Requests on Plaintiff the following day, June

21   24, 2022. *See* ECF No. 52. Accordingly, Plaintiff's written responses and document production

22   were due on July 25, 2022. F.R.C.P. 33(b)(2). When that date came and went without any response,

23

24

25   _____

26   [1] Interestingly, after <u>choosing</u> Arizona as his preferred venue over Washington, D.C., Plaintiff now finds it inconvenient when Defendant proposes to meet in Arizona for litigation-related purposes such as depositions of parties and insists on either Baltimore, Maryland or Washington, D.C. as preferred locations. Notably, Plaintiff, his counsel, and his wife – an identified witness with information and knowledge of allegations in Plaintiff's Complaint according to Plaintiff – failed to appear at Plaintiff's wife's scheduled deposition. Defendant intends to file a motion related to these inexcusable actions resulting in a waste of time, resources, and money.

27

28

counsel for Defendant had to remind Plaintiff's counsel of the past due date, resulting in several week-long extensions, presumably for the purpose of counsel continuing to gather responsive information and documents. However, when Plaintiff's counsel finally submitted Plaintiff's responses, they were threadbare at best and consisted almost entirely of the Parties' EEOC filings and references to those filings, and nothing more. Within weeks, counsel for Defendant issued to Plaintiff's counsel a lengthy letter identifying and explaining each deficient response in painstaking detail. Plaintiff and his counsel, however, have failed to resolve these issues after having ample time to do so. Indeed, Defendant's counsel, on multiple occasions, requested that Plaintiff's counsel not only confirm receipt of its attempts to resolve the discovery disputes but to provide supplemental responses or an explanation for the lack of responses; and, each time, Plaintiff's counsel failed to even acknowledge counsel for Defendant's attempts. Finally, after several communications that Defendant's counsel intended to contact the Court to assist in resolving the discovery deficiencies, Plaintiff's counsel responded and agreed to be available for a call. That call was held on October 17, 2022, when the Court directed that Plaintiff submit supplemental discovery by October 21, 2022. Though Plaintiff has made a supplemental production with supplemental responses, as a whole, his discovery responses continue to be woefully deficient.

Accordingly, Defendant submits with this Motion, Exhibits 1-2, pursuant to LRCiv 37.1(a), that set forth the specific discovery requests, the answers received, and the reasons why Plaintiff's answers are deficient.  As described more fully in Exhibits 1-2, Plaintiff responded inadequately to the Discovery Requests by: (1) failing to fully respond or provide responsive documents or information to the Discovery Requests, (2) raising unsupported, boilerplate objections without answering or producing responsive documents, and (3) improperly claiming that he need not respond to Discovery Requests because he "is not seeking lost wages in this litigation."

**FACTUAL BACKGROUND**

This case centers on allegations that Defendant, Plaintiff's former employer, discriminated and retaliated against him because of his age in violation of the Age Discrimination in Employment Act and because of his disability in violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973.  *See* Compl. ¶ 1.  On June 23, 2022, pursuant to Federal Rule of Civil Procedure 33 and 34, Defendant served Plaintiff with its First Set of Interrogatories and Request for Production of Documents and Things. *See* ECF Nos. 51, 52.  On the date his responses were due, Plaintiff's counsel requested a two week extension. *See* E-Mail from Gregory G. Paul, Paul Law Offices, PLLC, to Jennifer L. Curry, Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. (July 25, 2022), attached as Ex. A. When Plaintiff's counsel failed to respond after the two week extension, on August 10, 2022, Defendant's counsel emailed him with a reminder. *See* E-Mail from Jennifer L. Curry, Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., to Gregory G. Paul, Paul Law Offices, PLLC (Aug. 10, 2022), attached as Ex. B. Only after that prodding did Plaintiff's counsel request an additional extension to the deadline to which counsel for Defendant agreed.  *See* E-Mail from Gregory G. Paul, Paul Law Offices, PLLC, to Jennifer L. Curry, Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. (Aug. 11, 2022), attached as Ex. C. Plaintiff ultimately served his responses on August 18, 2022, three weeks after the original deadline ("Initial Discovery Responses"). Plaintiff's Initial Discovery Responses did not fully answer or address the Discovery Requests served.

On September 14, 2022, counsel for Defendant sent a 20-page detailed discovery deficiency letter to Plaintiff's counsel in an attempt to resolve the deficiencies in Plaintiff's Initial Discovery Responses ("Deficiency Letter").  *See* Letter from Chaitra Gowda,  Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., to Gregory G. Paul, Paul Law Offices, PLLC (Sept. 14, 2022), attached as Ex. D.  Counsel for Plaintiff was given ten (10) days to cure the identified deficiencies,

but not only did Plaintiff (or his counsel) fail to acknowledge receipt of the Deficiency Letter, but he also failed to comply with the deadline or request an extension. As such on, September 27, 2022, Defendant's counsel, again, reached out to counsel for Plaintiff requesting a status update and voluntarily provided an additional two days to respond to the Deficiency Letter. *See* E-Mail from Jennifer L. Curry, Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., to Gregory G. Paul, Paul Law Offices, PLLC (Sept. 27, 2022), attached as Ex. E. When this communication also went ignored, on October 4, 2022, Defendant's counsel sent a formal communication to Plaintiff's counsel, in compliance with Federal Rules of Civil Procedure 37(a)(1) and United States District Court for the District of Arizona Local Rule 7.2(j), seeking to resolve the discovery disputes in good faith and providing a date and time that Defendant's counsel intended to contact the Court to address all of their concerns. *See* E-Mail from Chaitra Gowda, Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., to Gregory G. Paul, Paul Law Offices, PLLC (Oct. 4, 2022), attached as Ex. F. At the notion that counsel for Defendant intended to contact the Court, Plaintiff's counsel agreed to a call; having finally gotten Plaintiff's counsel's attention, counsel for Defendant responded that a call to the Court would not be necessary if Plaintiff would take the time to respond to the Deficiency Letter and supplement his Initial Discovery Responses by October 10, 2022, voluntarily giving Plaintiff another 5-day extension, and suggested that counsel tentatively schedule a call for October 12, 2022, if necessary. *See* E-Mail from Jennifer L. Curry, Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., to Gregory G. Paul, Paul Law Offices, PLLC (Oct. 5, 2022), attached as Ex. G. Plaintiff's counsel <u>never</u> responded to that email and failed to produce a response to the Deficiency Letter by October 10.

When this date came and went with <u>zero</u> communications from Plaintiff's counsel, Defendant's counsel scheduled the final phone call for October 12, 2022 at 2:30 p.m. to attempt to

address Plaintiff's utter refusal to engage in any discussion or discovery practice.[2] *See* E-Mail from Jennifer L. Curry, Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., to Gregory G. Paul, Paul Law Offices, PLLC (Oct. 11, 2022), attached as Ex. H. At 2:27 p.m. that day, just three minutes before this phone call was to take place, Plaintiff's counsel requested to reschedule it. *See* E-Mail from Gregory G. Paul, Paul Law Offices, PLLC, to Jennifer L. Curry, Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. (Oct. 12, 2022), attached as Ex. I. Ultimately, on October 13, 2022, counsel for both parties participated in a phone call where Plaintiff's counsel stated explicitly that he would produce supplemental documents and written responses by Monday, October 17, 2022. Acting in good faith, Defendant's counsel agreed to yet another extension but also requested that the Parties schedule a call with the Court as it prepared to file this Motion.

Of course, Plaintiff and his counsel did not produce anything on October 17, as promised. Rather, counsel for the Parties attended a conference call with this Court's Chambers. This Court directed Plaintiff to produce supplemental discovery responses and documents by October 21, 2022 and simultaneously granted Defendant's request to file a motion to compel thereafter.

Plaintiff produced supplemental discovery responses ("Supplemental Discovery Responses") on October 21, 2022; however, a review shows that the majority of Defendant's requests continue to be unanswered or deficient, with less than 2 months before this Court's ordered close of discovery. As such, Defendant's efforts to resolve this dispute have now been exhausted and Defendant has been left with no option other than to petition this Court to grant this Motion to Compel.

---

[2] Notably, as of the date of the filing of this Motion, Plaintiff and his counsel have failed to issue any discovery requests or engage in active discovery themselves, despite this Court having set the close of discovery for December 19, 2022. *See* ECF No. 51. It should also be noted that despite having more than 4 months to engage in his own discovery without doing a thing, Plaintiff's counsel has recently indicated his intent to seek an extension of discovery. Defendant's counsel finds this request illogical and Defendant will vociferously oppose based on Plaintiff and his counsel's complete lack of participation and inaction in the discovery process.

1

## **LEGAL STANDARD**

2

3      Parties in a civil case "may obtain discovery regarding any nonprivileged matter that is

4      relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P.

5      26(b)(1).  The purpose of discovery is to "remove surprise from trial preparation so the parties can

6      obtain evidence necessary to evaluate and resolve their dispute."  *Compass North Industries LLC*

7      *v. Taylor*, No. CV-14-00034, 2014 WL 2779175, at *1 (D. Ariz. June 19, 2014).  To achieve that

8      end, Rule 26(b) "is to be liberally interpreted to permit wide-ranging discovery of information,

9      even if that information is not ultimately admitted at trial."  *Nova Financial & Investment Corp. v.*

10     *McDermott*, No. CV-18-00075, 2018 WL 10399890, at *1 (D. Ariz. Oct. 29, 2018) (citation

11     omitted).

12     Under Federal Rule of Civil Procedure 33, a party may propound interrogatories that relate

13     to any matter that may be inquired into under Rule 26(b).  Fed. R. Civ. P. 33(a)(2).  In response to

14

15     a properly served interrogatory, a responding party is obligated to provide a full and complete

16     response under oath thirty (30) days after being served.  Fed. R. Civ. P. 33(b)(2)-(3).  If a party is

17     unable to provide the requested information, it may not simply leave the request unanswered;

18     rather, it must state, under oath, that it cannot provide the information, and offer a description of

19     the efforts it undertook to supply an answer.  *Pellerin v. Wagner*, No. 2:14-cv-02318, 2016 WL

20     950792, at *3 (D. Ariz. March 14, 2016).  A responding party is permitted to object to a request,

21

22     but "the grounds for objecting to an interrogatory must be stated with specificity" and "[a]ny

23     ground not stated in a timely objection is waived, unless the court, for good cause, excuses the

24     failure." *Blemaster v. Sabo*, No. 2:16-CV-04557, 2017 WL 4843241, at *4 (D. Ariz. Oct. 25, 2017).

25     Under Federal Rule of Civil Procedure 34, a party may seek the production of documents,

26     electronically stored information, and tangible things in the responding party's possession, custody,

27     or control.  Fed. R. Civ. P. 34(a).  Similar to Rule 33, a responding party is permitted to object to

28

a request but "[f]or each item or category," the party must "state with specificity the grounds for objecting to the request, including the reasons." *Blemaster*, 2017 WL 4843241, at *4.   If a responding party fails to answer an interrogatory served under Rule 33 or comply with a request for production under Rule 34, a discovering party, upon reasonable notice to other parties, may move for an order compelling discovery response.   *See* Fed. R. Civ. P. 37.

## ARGUMENT

**I.   This Court Should Compel Plaintiff to Provide Complete Discovery Responses to Defendant Because His Deficient Responses Are Evasive or Incomplete that Fail to Fully Address the Requested Information.**

Under Federal Rule of Civil Procedure 37, "an evasive or incomplete disclosure, answer, or response *must* be treated as a failure to disclosure, answer, or respond." *Id.* (emphasis added). As the Advisory Committee Notes to the Federal Rules of Civil Procedure make clear, "[t]he purpose of discovery is to provide a mechanism for making relevant information available to litigants . . ." Fed. R. Civ. P. 26(f) Advisory Committee's Note (1983 Amendment).   A responding party that gives evasive or incomplete responses in an effort to hide relevant information undermines this purpose.   In this case, Plaintiff and his counsel have engaged in tactics to fully avoid answering Defendant's Discovery Requests and have refused to make  relevant information available to Defendant.   Plaintiff and his counsel not only employed delay tactics at Defendant's expense, but they concealed relevant information by failing to provide complete answers to the Discovery Requests, including (1) the failure to properly identify and describe persons or communications despite adequate definitions in the Interrogatories; and, (2) the reference to incomplete or unresponsive documents as sufficient answers to the Discovery Requests.

Numerous interrogatories required Plaintiff to identify and describe in detail specific information. *See* Def.'s Interrog. Nos. 1–26.   The Definitions section provided with Defendant's Interrogatories defines "identify" when used in reference to a natural person, as that person's full

name, present or last known address, home and business telephone numbers, and present or last known place of employment.  Def.'s Interrog. ¶ 12.   The Definitions section defines "describe in detail" as the complete description of all facts that are pertinent to the act, occurrence, or event in question including, where applicable, the date, time, place, circumstance, nature, substance, description, or explanation of the act, event, or occurrence, and the identity of all persons or entities involved in the act, event, or occurrence.  Def.'s Interrog. ¶ 7.  Despite these definitions, Plaintiff, in both his Initial Discovery Responses *and* Supplemental Discovery Responses, failed to fully answer the propounded Interrogatories.

For some examples, Defendant's Interrogatory No. 1 asks Plaintiff to identify those persons with knowledge of the subject-matter of his Complaint and describe in detail each person's knowledge.  Def.'s Interrog. No. 1.  In response to this request, initially, Plaintiff merely provided a list of names without any contact information or context as to who they are, leaving Defendant to discern the "who"; "what"; "when"; "why"; and "where" as it relates to these individuals.  *See* Pl.'s Resp. to Def.'s Interrog. No. 1.  In the Supplemental Discovery Responses – 88 days after Plaintiff's discovery responses were due – he excluded the names of individuals that he references in other responses, did not properly "identify" some of the individuals, and provided so little context as to the scope of the various individuals' knowledge that Defendant once again is left to investigate on its own. *See* Pl.'s Supp. Resp. to Def.'s Interrogatory No. 1. In fact, for many individuals, Plaintiff directs Defendant to search the individual's AURA personnel file for information about the knowledge they have about Plaintiff's claims. *See e.g.,* Pl.'s Supp. Resp. to Def.'s Interrogatory Nos. 1, 17. It defies logic that another person's personnel file would include any information about a former colleague's discrimination claims. Confusing further are Plaintiff's claims that contact information for almost all the individuals "identified" in Interrogatory No. 1 is

Defendant's counsel, which is false.[3] As a result, Defendant will need to expend time, money, and other resources to ascertain information readily available to Plaintiff, and with some, Defendant will not have the ability to contact individuals who may possess discoverable, relevant material to the subject-matter of this litigation.

In Interrogatory Nos. 2 and 3, Defendant requested all communications, in any manner or format, had by Plaintiff related to different topics. In response, Plaintiff simply asserts that he has "no recorded communications and refers to documents provided…" *See* Pl.'s Supp. Resp. to Def.'s Interrog. Nos. 2–3. These specific Interrogatories did not seek *only* recorded communications, and thus, Defendant is left to guess whether Plaintiff appropriately provided all communications, or failed to identify communications that were not "recorded."

In Interrogatory No. 11, Defendant requests that Plaintiff "[d]escribe in detail all income or other earnings, including, but not limited to, all salaries, bonuses, and fringe benefits, which you have been offered, been promised, or received from any and all sources, including, but not limited to, AURA, from the start of your employment with AURA until the present, and state the precise amount, date, nature and source of all such income and earnings," to which Plaintiff responded in both his Initial and Supplemental Discovery Response to that Interrogatory that he "is not claiming lost wages in this litigation[]"*See* Pl.'s Supp. Resp. to Def.'s Interrog. No. 11.  Yet, in his supplemental response to Interrogatory No. 13, Plaintiff states that he "seeks an award of back pay and front pay." *See* Pl.'s Supp. Resp. to Def.'s Interrog. No. 13. And, further in his written responses to the Document Requests, Plaintiff states he "is not seeking lost wages in this litigation. *See* Pl.'s Resp. to Def.'s Req. for Prod. Nos. 13–14. This is just *one* example wherein Plaintiff

---

[3] Though some individuals "identified" by Plaintiff are currently Defendant-affiliated, several are not, such as Tiffany Shreves, Allison Peck, Macrina Greve, and Henry Roe. Accordingly, it is Plaintiff who must provide accurate information to Defendant to "identify" such individuals as he asserts they have knowledge of the allegations in his Complaint.

provides confusing, incomplete, contradicting discovery responses that trigger more questions than answering any existing questions.

Moreover, Interrogatory No. 21 requests Plaintiff describe in detail his allegation that he has a disability as defined under the ADA, including a description of the disability and when it first developed. Def.'s Interrog. No. 21. Plaintiff initially chose to ignore the defined terms "describe in detail" as it relates to his alleged disability and instead provided a generic definition of diabetes. *See* Pl.'s Resp. to Def.'s Interrog. No. 21. It is worth noting that there are multiple types of diabetes, various symptoms based on the specific individual, various impediments or lack thereof, and different treatment plans based on the type of diabetes and the medical history of the diabetic individual. Plaintiff's Supplemental Discovery Responses do not provide additional context. In fact, the Supplemental Discovery Responses create more questions; Plaintiff (1) identifies physicians without identifying these physicians or their contact information in his answer to Interrogatory No. 1; (2) includes a *new* alleged "disability"; (3) provides no timeframe as to the treatment he vaguely mentions he received while in Chile; and, (4) leaves Defendant to assume that he has sought <u>no</u> medical care for his alleged disability since leaving Chile. *See* Pl.'s Supp. Resp. to Def.'s Interrogatory No. 21. Plaintiff's silence on these topics leaves Defendant without sufficient knowledge and information to comprehend and assess the scope of Plaintiff's allegations in his Complaint.

In addition to incomplete or partial responses, Plaintiff seeks to evade responding to the Discovery Requests by reference to incomplete or unresponsive documents. For example, Interrogatory No. 6 requests Plaintiff "[i]dentify all grievances, claims, demand letters, complaints, lawsuits, administrative claims, including insurance claims, bankruptcy petitions, and criminal complaints that have ever been sent, made, or filed by you or against you within the past ten (10) years…" yet Plaintiff states – in both his Initial Discovery Responses and the Supplemental

Discovery Responses – simply that he "filed with the EEOC and tribunal in Chile." *See* Pl.'s Supp. Resp. to Def.'s Interrogatory No. 6. Plaintiff's Initial Discovery Responses (and Supplemental Discovery Responses) are similarly incomplete with several other Discovery Requests. *See e.g.,* Pl.'s Supp. Resp. to Def.'s Interrogatory Nos. 10, 13, 15, 17. Interrogatory No. 23 requests *descriptions* and *details* related to Plaintiff's allegations set forth in his Complaint.  Def.'s Interrog. No. 23.  First, Plaintiff objects to the Interrogatory No. 23 as it is overbroad without any explanation as to how this could be. To be clear, Defendant requested information specifically tailored to *Plaintiff's* allegations in *his* Complaint, nothing more. Second, Plaintiff states that he "recalls" communications but omits any details or substance to provide any context to Defendant. Third, Plaintiff responds by referring Defendant to his Responses to Requests for Production of Documents (the "Production"), documents from the EEOC's file, and his AURA personnel file. *See* Pl.'s Supp. Resp. to Def.'s Interrog. No. 23.  The documents in the EEOC file do not address the pointed Interrogatory, and Plaintiff provides no context so that Defendant can investigate his allegations for the purpose of defending the litigation. This is a running theme in Plaintiff's responses wherein he repeatedly "refers to documents provided in the EEOC investigation process[.]" *See, e.g.*, Pl.'s Supp. Resp. to Def.'s Interrog. Nos. 2–3, 16, 18–23.  Moreover, Interrogatories 2, 3, and 23 ask Plaintiff to identify and describe in detail communications with Defendant or various third parties regarding the subject-matter of the Complaint.  *See* Def.'s Interrog. Nos. 2–3, 23.  In response to these requests, Plaintiff refers again to either the EEOC file and investigation and/or his Production, thereby failing to identify a single responsive oral communication which necessarily cannot be captured in the document production. *See* Pl.'s Supp. Resp. to Def.'s Interrog. Nos. 2–3, 23.

Plaintiff's deficiencies do not end with his responses to Interrogatories.  In response to several of Defendant's Document Requests, Plaintiff instructs simply to "see Plaintiff's Responses

to Requests for Production of Documents," Plaintiff has in fact *not* produced any responsive documents to most of the Document Requests.  *See, e.g.,* Pl.'s Resp. to Def.'s Req. for Produc. Nos. 1, 3–6, 8–10, 12–13, 15, 19–20.   For example, Request No. 8 seeks "[a]ll documents which embody, concern, relate, refer, reflect, or pertain in any way to treatment you received for the medical condition you allege is a disability pursuant to the Americans with Disabilities Act pursuant to Paragraph 10 of your Complaint, from 2014 to present…" *See* Def.'s Req. for Produc. No. 8.  While Plaintiff responded that all such materials would be produced, his Production contains absolutely no responsive documents, communications, logs, photographs, videos, recordings, or ESI.  Further, with regards to Request No. 9 – which requests medical-related documents – Plaintiff states that he has requested responsive documents yet Defendant has received none as of the date of this filing. *See* Pl.'s Resp. to Def.'s Req. for Produc. No. 9. Notably, Plaintiff does not state which physicians he requested records from and when those records were requested, and Plaintiff has ignored Defendant's requests to sign a HIPAA Release Authorization form that would allow Defendant to conduct its due diligence of Plaintiff's claims. *See* E-Mail from Chaitra Gowda, Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., to Gregory G. Paul, Paul Law Offices, PLLC (Oct. 19, 2022), attached as Ex. J.

Plaintiff's Production and supplemental Production do not come close to capturing most, if any, of the 26 requests for documents that Defendant propounded.  Indeed, 212 of the 271 pages in Plaintiff's initial Production consist of the EEOC's file, which includes nothing more than both parties' statements of position with the accompanying exhibits and notes from the EEOC investigator. Not to mention, the remainder of the 59 pages consist of several duplicates of Plaintiff's W-2s and identical copies of a few of Plaintiff's communications that are mostly unrelated to Plaintiff's claims.  Plaintiff's supplemental Production consist of 100 files, that consist of a random assortment of e-mail communications between Plaintiff and Defendant's employees

when Plaintiff was employed by Defendant, which do not appear to relate to Plaintiff's claims, discrimination against his age or disability, or his allegations that certain discriminatory actions resulted in his ultimate termination.[4] To be clear, Plaintiff provides zero medical records, no documents showing efforts to mitigate damages, no financial-related documents that demonstrate his alleged monetary losses, zero communications with third parties or tribunals about his allegations, no documents showing he was treated unfairly, and no documents to demonstrate his alleged disabilities.

Lastly, Plaintiff's disorganized and deficient Initial and Supplemental Discovery Responses provide no description to demonstrate which documents are responsive to which Interrogatories or Document Requests. Federal Rule of Civil Procedure 34(b)(2)(E) requires a party producing documents in response to a request for production to "organize and label them to correspond to the categories in the request." Courts have held the purpose of this requirement is to prevent a party from "obscuring the significance of documents by giving some structure to the production." *Fed. Deposit Ins. Corp. v. Appleton*, No. CV 11-476-JAK (PLAx), 2012 WL 10245383, at * 3 (C.D. Cal. Nov. 29, 2012) (internal citations omitted); *see also Shuster v. Shuster*, No. 2:16-cv-03315 JWS, 2017 WL 3530602, at * 3 (D. Ariz. Aug. 16, 2017) ("[F.R.C.P. 34(b)(2)(E)] requirement exists to prevent a party from doing . . . the proverbial unorganized 'document dump.'"). Defendant reiterated this requirement to Plaintiff in its instructions to the Document Requests. *See* Def.'s Req. for Produc., Instr. K ("Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, each document produced in response to these Requests shall be organized and labeled to identify each Request to which it is responsive and shall be segregated by the Request to which it is primarily

---

[4] Interestingly, of the limited e-mails provided, one is from Enrique Cancino, who Plaintiff does not mention at all in his Initial or Supplemental Discovery Responses; this includes Interrogatory No. 1 where he was asked to identify all individuals with knowledge or information about the allegations stated in the Complaint. *See* Pl.'s Supp. Resp. to Def.'s Interrog. No. 1.

responsive."). Plaintiff's omissions make it even more difficult for Defendant to comprehend his allegations and what evidence exists to support his allegations. Defendant seeks to identify the factual underpinnings of Plaintiff's emotional distress, medical disability, and various damages claims, which Plaintiff bears the burden of articulating and supporting. Therefore, an order compelling Plaintiff to answer interrogatories and produce relevant document is appropriate.

**II.    This Court Should Compel Plaintiff to Provide Complete Responses to Defendant's Discovery Requests Because His Objections Are Boilerplate and Unsupported.**

Plaintiff also repeatedly lodges generalized objections to Defendant's Discovery Requests, stating "relevancy," "privacy," and "overbroad." *See, e.g.*, Pl.'s Supp. Resp. to Def.'s Interrog. Nos. 5, 7, 9, 11; Pl.'s Resp. to Def.'s Req. for Produc. Nos. 3–6, 10–12, 14–17, 26. Plaintiff's unsupported, boilerplate objections for overbreadth and burdensomeness in response to the Discovery Requests do not comply with the requirement, for both interrogatories and request for production, "that the grounds for objecting . . . be stated with specificity." *Blemaster*, 2017 WL 4843241, at *4. Courts have held that the act of making boilerplate objections is *prima facie* evidence of a Rule 26(g) violation, "because if the lawyer had paused, made a reasonable inquiry, and discovered facts that demonstrated the burdensomeness or excessive cost of the discovery request, he or she should have disclosed them in the objection, as both Rule 33 and 34 responses must state objections with particularity, on pain of waiver." *Id.* at *4. Further, "privacy" is not an appropriate objection in general; this is particularly so where Plaintiff has initiated a lawsuit involving his employment, age, alleged disability, and termination. In any event, a stipulated protective order would ease any concerns of "privacy" – though as of the date of this Motion, Plaintiff's counsel has not approached counsel for Defendant to enter into such an agreement, which Defendant would fully join. Finally, pursuant to Federal Rule of Civil Procedure 34, an objection must state whether any responsive materials are being withheld on the basis of that

objection. Fed. R. Civ. P. 34(b)(2)(C). Plaintiff's responses make no such disclaimer. As such, Plaintiff's sweeping dismissal of his discovery obligations should not be countenanced.

### III. This Court Should Compel Plaintiff to Provide Complete Responses to Defendant's Discovery Responses Because His Objections That the Discovery Requests Seek Irrelevant Information Are Without Merit.

In addition to his generalized objections outlined above, Plaintiff repeatedly objects to Defendant's Discovery Requests based on relevance and then provides no responses. *See, e.g.*, Pl.'s Resp. to Def.'s Interrog. Nos., 7, 9, 11; Pl.'s Resp. to Def.'s Req. for Produc. Nos. 13–14. This Court should give no weight to these objections because not only are his assertions wrong, but it does not comply with the discovery standard. "Discovery rules are liberally construed to effect the just, speedy, and inexpensive resolution of litigation." *Feuerstein v. Home Depot, U.S.A., Inc.*, No. 2:12-CV-1062 JWS, 2013 WL 4507612, at *1 (D. Ariz. Aug. 23, 2013) (*citing* 8 Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, *Federal Practice and Procedure,* § 2001 at 44 (2d ed. 1994)). The scope of discovery is meant to be broad. *Id.* Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)(1). The Ninth Circuit observes these principles and has emphasized that "wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for truth." *Epstein v. MCA, Inc.,* 54 F.3d 1422, 1423 (9th Cir. 1995) (*citing Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993)).

Plaintiff has three employment-related claims; accordingly, interrogatories related to his prior and current employment as well as his prior and current wages are relevant to Defendant's defenses. And, as addressed *supra*, Plaintiff states both that he is and he is not seeking compensatory damages through back and front pay. Regardless of Plaintiff's stance on this issue, Defendant is well within reason to request employment-related documents when Plaintiff filed an employment-related Complaint.

For example, Interrogatory No. 7 requests Plaintiff identify information related to his employment prior to working for Defendant. *See* Def.'s Interrog. No. 7.  Plaintiff responds to this request with an objection based on relevancy. *See* Pl.'s Supp. Resp. to Def.'s Interrog. No. 7. However, it is well within Defendant's purview to request information related to Plaintiff's prior employment to discern the viability of his claims, and if necessary, to investigate Plaintiff's work performance history compared to Defendant's experience with Plaintiff as an employee. Though, Plaintiff ultimately provided the name of his former employer and the timeframe of that employment, Plaintiff omitted several aspects of the Interrogatory such as the identity and title of the individuals to whom he reported. *See* Pl.'s Supp. Resp. to Def.'s Interrog. No. 7. Defendant limited its request in time and scope, and thus it is a reasonable and relevant request pursuant to the liberal discovery rules.

Additionally, Defendant rejects Plaintiff's argument that his past employment is not relevant or an issue in litigation related to his employment discrimination and retaliation claims. To the contrary, courts in this Circuit have found prior employment records relevant and discoverable with regard to a plaintiff's work history, credibility, and required mitigation of damages.  *See, e.g.*, *Robinson v. Jones Lang LaSalle Americas, Inc*., No. 3:12-CV-00127-PK, 2012 WL 3763545, at *3 (D. Or. Aug. 29, 2012) (holding that details of plaintiff's prior employment ten years prior to working for defendant may be relevant to plaintiff's claims); *First v. Kia of El Cajon*, No. 10-CV-536-DMS BGS, 2010 WL 3245778, at *2 (S.D. Cal. Aug. 17, 2010) ("Plaintiff's former employment records are reasonably calculated to lead to discovery of admissible information concerning his ability to find another job, which is relevant to Plaintiff's potential damages."); *Hodgdon v. Northwestern Univ.*, 245 F.R.D. 337 (N.D. Ill. 2007) (finding that prior employment records are discoverable because they "could contain information that bears upon [Plaintiff's] credibility.").

Moreover, in response to Interrogatories 9, 10, and 11, which delve into Plaintiff's recent employment history and earnings, Plaintiff once again objects on the grounds of relevancy because "Plaintiff is not claiming lost wages in this litigation." *See* Pl.'s Supp. Resp. to Def.'s Interrog. No. 11. Yet, in answering Interrogatory No. 13, Plaintiff states that he is seeking both back and front pay. *See* Pl.'s Supp. Resp. to Def.'s Interrog. No. 13. Adding more confusion to what Defendant deemed a simple question is that Plaintiff's Complaint explicitly requests lost wages as a form of relief. Compl. ¶ 25, 31, 37. Accordingly, Defendant is entitled to know Plaintiff's employment status(es), attempts to gain employment, and any and all compensation he has received since his termination from AURA. Specifically, Defendant is entitled to know amongst other things, what, if any, communications he has had with potential and current employers as it pertains to his former employment with Defendant and the timing of Plaintiff's search for new employment. In particular, as is known by all parties, Plaintiff continued to reside in *free* housing – paid by Defendant – in Chile for at least 8 months after his termination by Defendant when he and his family refused to vacate. As such, any such current, potential, and future communications and compensations from other employers is relevant and goes to the heart of Defendant's defenses. Plaintiff also improperly uses the claim that he is not seeking lost wages to justify his failure to produce pertinent documents. *See* Pl.'s Resp. to Def.'s Req. for Produc. Nos. 13–14. This Court should reject Plaintiff's unsupported and baseless objections to relevant Discovery Requests and compel Plaintiff to answer interrogatories and produce responsive documents.

## CONCLUSION

For the foregoing reasons, and as set forth in the attachments to this Motion, Defendant respectfully moves this Court for an order compelling Plaintiff to provide responses to the Discovery Requests that will cure the deficiencies described above and detailed in the LRCiv. 37.1 attachments. Of note, the undersigned has attempted in good faith to resolve this matter with

Plaintiff's counsel.  A certificate of the undersigned's good faith efforts to resolve this matter is filed concurrently herewith.

Respectfully submitted,

*/s/ Thomas H. Barnard*
Thomas H. Barnard
Bar No. 20982
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
100 Light Street
19th Floor
Baltimore, Maryland 21202
P:  410-862-1183
F:  410-547-0699
E: tbarnard@bakerdonelson.com

*/s/ Jennifer L. Curry*
Jennifer L. Curry
*admitted pro hac vice*
Chaitra Gowda
*admitted pro hac vice*
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
100 Light Street
19th Floor
Baltimore, Maryland 21202
P:  410-862-1183
F:  410-547-0699
E: jcurry@bakerdonelson.com
E: cgowda@bakerdonelson.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE REGARDING DISCOVERY MOTION

Pursuant to Fed. Rule of Civil Procedure 37(a)(1) and LRCiv 7.2(j), I certify that I have engaged in a good faith effort to resolve the issues raised by the foregoing Motion to Compel. After numerous attempts to contact counsel via email and telephone, including the deficiency letter attached hereto, Plaintiff's counsel had been unresponsive until October 4, 2022. Thereafter, Plaintiff's counsel has submitted supplemental discovery responses that continue to be deficient. Thus, we have been unable to satisfactorily resolve this matter. In addition, Parties scheduled a conference call with this Court's Chambers to discuss the discovery dispute, at which time this Court permitted undersigned to submit this filing.

*/s/ Jennifer L. Curry*
Jennifer L. Curry

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 27th day of October 2022, the foregoing was filed and

served via this Court's electronic CMF e-filing system on the following:

Gregory G. Paul
Paul Law Offices
The Presidio
1808 Wedemeyer Street
Suite 216
San Francisco, California 94129
gregpaul@paullaw.com

*Counsel for Plaintiff Michael Westfall*


                                        */s/ Jennifer L. Curry*
                                        Jennifer L. Curry