# EXHIBIT 1

**LRCiv. 37.1 Attachment**

**Deficient Interrogatory Responses**

Pursuant to LRCiv. 37.1, AURA submits this attachment that sets forth, in separate paragraphs, the specific interrogatories propounded, answers received, and reasons why said answers are deficient.

## AURA'S FIRST SET OF INTERROGATORIES

## Interrogatory No. 1

(1) **Question Propounded**: Identify all persons who have knowledge of any matter concerning, relating or referring to the allegations in, or the subject matter of, your Complaint, and identify and describe in detail the nature and substance of each such person's knowledge.

(2) **Answer Received**: Plaintiff answers as follows:

Michael Westfall
Vivian Westfall
Arturo Nunez
Supervisor Matt Rippa
Sebastian Raaphorst
Pedro Gigoux
Tim Gaggstatter
Ignacio Arriagada
Tiffany Shreeves
Emma Kurz
Hawi Stecher
Gonzalo Sepulveda
Allison Peck
Macrina Greve
Henry Roe
Manuel Gomez
Jimenez Evelyn Cortes

(3) **Supplemental Answer Received**:

Michael Westfall: 1495 Transco Road Scottsdale, Virginia 24590 P:423-584-7763 Mr. Westfall's last place of employment was AURA and he is the Defendant in this case.

Vivian Westfall: 1495 Transco Road Scottsdale, Virginia 24590 P:423-584-7763 Vivian Westwood is Mr. Westfall's spouse, and as such will be claiming spousal privilege as is permitted in Arizona statute 12-2231.

Arturo Nunez: % Jennifer L. Curry, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, 100 Light Street 19th Floor, Baltimore, Maryland 21202 P:410-862-1183 F:410-547-0699 E:jcurry@bakerdonelson.com Mr. Nunez was Mr. Westfall's Supervisor during his employment with AURA. He conducted his yearly performance reviews and ultimately terminated his employment with AURA.

Matt Rippa : % Jennifer L. Curry, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, 100 Light Street 19th Floor, Baltimore, Maryland 21202 P:410-862-1183 F:410-547-0699 E:jcurry@bakerdonelson.com Mr. Ripa was the Senior Software Engineer at AURA during the Plaintiff's employment. He worked closely with and provided feedback on both the Plaintiff's initial contract and subsequent employment as a regular employee.

Sebastian Raaphorst: % Jennifer L. Curry, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, 100 Light Street 19th Floor, Baltimore, Maryland 21202 P:410-862-1183 F:410-547-0699 E:jcurry@bakerdonelson.com, information should be available through Defendant's counsel via personnel files. Mr. Raaphorst was a co-worker of the Plaintiff.

Pedro Gigoux: % Jennifer L. Curry, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, 100 Light Street 19th Floor, Baltimore, Maryland 21202 P:410-862-1183 F:410-547-0699 E:jcurry@bakerdonelson.com, information should be available through Defendant's counsel via personnel files Mr. Gigoux was a co-worker of the Plaintiff.

Tim Gaggstatter: % Jennifer L. Curry, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, 100 Light Street 19th Floor, Baltimore, Maryland 21202 P:410-862-1183 F:410-547-0699 E:jcurry@bakerdonelson.com, information should be available through Defendant's counsel via personnel files Mr. Gaggstatter was a co-worker of the Plaintiff.

Ignacio Arriagada; % Jennifer L. Curry, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, 100 Light Street 19th Floor, Baltimore, Maryland 21202 P:410-862-1183 F:410-547-0699 E:jcurry@bakerdonelson.com, information should be available through Defendant's counsel via personnel files Mr. Arriagada was a co-worker of the Plaintiff.

Tiffany Shreves: % Jennifer L. Curry, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, 100 Light Street 19th Floor, Baltimore, Maryland 21202 P:410-862-1183 F:410-547-0699 E:jcurry@bakerdonelson.com, information should be available through Defendant's counsel via personnel files Ms. Shreves was hired by AURA after the Plaintiff.

3

Emma Kurz: % Jennifer L. Curry, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, 100 Light Street 19th Floor, Baltimore, Maryland 21202 P:410-862-1183 F:410-547-0699 E:jcurry@bakerdonelson.com, information should be available through Defendant's counsel via personnel files Ms. Kurz was hired by AURA after the Plaintiff.

Hawi Stecher: % Jennifer L. Curry, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, 100 Light Street 19th Floor, Baltimore, Maryland 21202 P:410-862-1183 F:410-547-0699 E:jcurry@bakerdonelson.com, information should be available through Defendant's counsel via personnel files Mr. Stecher was hired by AURA after the Plaintiff.

Gonzalo Sepulveda: Plaintiff has requested the treatment statements and billing records and will supplement as they are provided.

Allison Peck: % Jennifer L. Curry, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, 100 Light Street 19th Floor, Baltimore, Maryland 21202 P:410-862-1183 F:410-547-0699 E:jcurry@bakerdonelson.com, information should be available through Defendant's counsel via personnel files Ms. Peck was an employee of AURA and was in charge of a project the Plaintiff was put on during his 60-day notice period.

Macrina Greve: % Jennifer L. Curry, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, 100 Light Street 19th Floor, Baltimore, Maryland 21202 P:410-862-1183 F:410-547-0699 E:jcurry@bakerdonelson.com, information should be available through Defendant's counsel via personnel files Ms. Greve is a former employee of AURA and was instrumental in trying to hire the Plaintiff after his contract period.

Henry Roe:% Jennifer L. Curry, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, 100 Light Street 19th Floor, Baltimore, Maryland 21202 P:410-862-1183 F:410-547-0699 E:jcurry@bakerdonelson.com, information should be available through Defendant's counsel via personnel files Mr. Roe was the Deputy Director of Gemini for Aura and the Plaintiff's second line supervisor.

Manuel Gomez Jimenez: % Jennifer L. Curry, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, 100 Light Street 19th Floor, Baltimore, Maryland 21202 P:410-862-1183 F:410-547-0699 E:jcurry@bakerdonelson.com, information should be available through Defendant's counsel via personnel files Mr. Jimenez the head of Senior Science Operations for AURA during the Plaintiff's employment.

Evelyn Cortes: % Jennifer L. Curry, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, 100 Light Street 19th Floor, Baltimore, Maryland 21202 P:410-862-1183 F:410-547-0699 E:jcurry@bakerdonelson.com, information should be available

through Defendant's counsel via personnel files Ms. Cortes worked in the HR Department of AURA and the Plaintiff corresponded with her regarding his medical issues and leave.

(4) **Why Answer is Deficient**: This is but a partial response to Interrogatory No. 1, which requested that Plaintiff "identify" certain persons. The Definitions section provided with these Interrogatories defines "identify" when used in reference to a natural person, as that person's full name, present or last known address, home and business telephone numbers, and present or last known place of employment. *See* Def.'s Interrog. ¶ 12. Further, Interrogatory No. 1 requested that Plaintiff "describe in detail" the nature and substance of each such person's knowledge. The Definitions section defines "describe in detail" as the complete description of all facts that are pertinent to the act, occurrence, or event in question including, where applicable, the date, time, place, circumstance, nature, substance, description, or explanation of the act, event, or occurrence, and the identity of all persons or entities involved in the act, event, or occurrence. *See* Def.'s Interrog. ¶ 7. However, Plaintiff has not identified all persons listed with the detail required by AURA's definitions. Plaintiff barely provides the context of knowledge and/or information these individuals possess save for their respective positions if and when employed by AURA. This does not qualify as details of the nature and substance of each such person's knowledge. Further, Plaintiff indicates that Henry Roe, Tiffany Shreves, Alison Peck, and Macrina Greve are the company of Jennifer L. Curry, which is not an accurate statement. As such, Plaintiff is expected to ascertain these potential witnesses contact information and present the same to AURA.

**Interrogatory No. 2**

(1) **Question Propounded**: Identify and describe in detail each and every communication, whether written, recorded, electronic, or oral, that you claim constitutes an admission by or attributable to AURA. Your response should include, but not be limited to, identifying for each such communication, the date and place of the communication, the form of the communication, the parties to the communication, all witnesses to the communication, and the substance of the communication, in as verbatim a form as possible.

(2) **Answer Received**: Plaintiff refers to documents provided in the EEOC investigation process pursuant to F.R.C.P. 33(d). Plaintiff will supplement as discovery is ongoing.

(3) **Supplemental Answer Received**: Plaintiff has no recorded communications and refers to documents provided in the EEOC investigation process pursuant to F.R.C.P. 33(d).

(4) **Why Answer is Deficient**: Plaintiff fails to "identify" or "describe" *any* communications between Plaintiff and AURA relating to AURA or the allegations in the Complaint, and instead refers generally to the EEOC file and investigation. Further, Plaintiff explicitly states that he "has no recorded communications" but the Interrogatory required each and every communication, which includes those communications that are not recorded. AURA is without sufficient knowledge to discern whether any non-recorded communications exists. Plaintiff has thereby failed to identify a single responsive oral communication with AURA —which necessarily cannot be captured in the document production.

**Interrogatory No. 3**

(1) **Question Propounded**: Identify and describe in detail each and every communication, whether written, recorded, electronic, or oral, you have had with any state, local or federal agency with respect to any claims or allegations you have made against AURA. Your response should include, but not be limited to, identifying for each such communication, the date and place of the communication, the form of the communication, the parties to the communication, all witnesses to the communication, the form of the communication, and the substance of the communication, in as verbatim a form as possible.

(2) **Answer Received**: Plaintiff refers to documents provided in the EEOC investigation process pursuant to F.R.C.P. 33(d). Plaintiff will supplement as discovery is ongoing.

(3) **Supplemental Answer Received**: Plaintiff has no recorded communications and refers to documents provided in the EEOC investigation process pursuant to F.R.C.P. 33(d).

(4) **Why Answer is Deficient**: Plaintiff fails to "identify" or "describe" *any* communications between Plaintiff and any state, local, or federal agent relating to AURA or the allegations in the Complaint, and instead refers generally to the EEOC file and investigation. Further, Plaintiff explicitly states that he "has no recorded communications" but the Interrogatory required each and every communication, which includes those communications that are not recorded. AURA is without sufficient knowledge to discern whether any non-recorded communications exists. Plaintiff has thereby failed to identify a single responsive oral communication with any state, local, or federal agency —which necessarily cannot be captured in the document production.

**Interrogatory No. 5**

(1) **Question Propounded**: Identify and describe in detail each and every communication, whether written, recorded or oral, you have had with any person other than AURA, or any of its current or former officers, employees, agents, or representatives, concerning, relating or referring to the allegations in or the subject matter of your Complaint.

(2) **Answer Received**: OBJECTION: Attorney client privilege, work product, and overbroad. Notwithstanding this objection, Plaintiff has communicated with the EEOC pursuant to F.R.C.P. 33(d) and tribunal in Chile.

(3) **Why Answer is Deficient**: Plaintiff fails to "identify" or "describe" *any* communications between Plaintiff and any third party relating to AURA or the allegations in the Complaint, and instead refer generally to the EEOC file and investigation. Plaintiff has thereby failed to identify a single responsive oral communication with any third party—which necessarily cannot be captured in the document production. Further, Plaintiff's Response to Interrogatory No. 1 named seventeen (17) individuals that Plaintiff claims possess discoverable information. *See* Pl.'s Resp. to Def.'s Interrog. No. 1. Yet, Plaintiff has produced limited AURA-owned communications from only a select number of persons and has not produced a single communication from any of the remaining individuals. The suggestion that Plaintiff has not communicated with any of these identified individuals regarding AURA, his employment at AURA, or the substance of Plaintiff's allegations strains credulity, particularly in light of the fact that Plaintiff identified those individuals as having information related to his claims.

**Interrogatory No. 6**

(1) **Question Propounded**: Identify all grievances, claims, demand letters, complaints, lawsuits, administrative claims, including insurance claims, bankruptcy petitions, and criminal complaints that have ever been sent, made, or filed by you or against you within the past ten (10) years. Your answer should include the name of the person or entity against whom you made such a claim or from whom made such a claim against you, the date the claim was made, the jurisdiction or venue in which you made the claim or the claim was made against you, and a detailed description of the claim.

(2) **Answer Received**: Plaintiff has filed with the EEOC and tribunal in Chile.

(3) **Why Answer is Deficient**: First, Plaintiff fails to "identify", and instead refers generally to the EEOC and tribunal in Chile without providing any detail as required by the term "identify." Plaintiff ignores AURA's request that he provide a detailed description of each claim so that AURA can ascertain any claims Plaintiff has filed whether against AURA or another employer.

**Interrogatory No. 7**

(1) **Question Propounded**: Identify each person or entity (other than AURA) by whom you were employed or for whom you performed services for the ten (10) years <u>prior to</u> your employment with AURA, and describe in detail your employment by each such identified person or entity, including, but not limited to, the position(s) held, the date(s) each position was held, the compensation (including salary, bonuses, and fringe benefits) received by you, including the date and amount of any raises, the identity and title of the individual(s) to whom you reported, and the date(s) and reason(s) your employment with each person or entity ended, if applicable.

(2) **Answer Received**: Objection: Relevancy and Overbroad. Plaintiff's past employment is not an issue in this litigation.

(3) **Supplemental Answer Received**: Objection: Relevancy and Overbroad. Notwithstanding the objection, the Plaintiff worked as a software engineer at Los Alamos National Laboratory for the previous twelve years where had a Q-level security clearance and worked on programming such as linear particle accelerations, space-based sensors, and airborne surveillance systems. He earned approximately $105,000.00. He ultimately left this position to work for AURA and the international experience. Additional information can be found via his personnel file at AURA.

(4) **Why Answer is Deficient**: First, Plaintiff's relevancy and overbroad objections are boilerplate objections without any specificity, which make the objections improper. Federal Rule of Civil Procedure 33(b)(4) requires that "the grounds for objecting to an interrogatory must be stated with specificity" and cautions that "[a]ny ground not stated in a timely objection is waived, unless the court, for good cause, excuses the failure."

*Blemaster v. Sabo*, No. 2:16-CV-04557 JWS, 2017 WL 4843241, at *4 (D. Ariz. Oct. 25, 2017). Similarly, Federal Rule of Civil Procedure 34(b)(2)(B) requires that "[f]or each item or category," an objecting party must "state with specificity the grounds for objecting to the request, including the reasons." *Id.* Courts have held that the act of making boilerplate objections is *prima facie* evidence of a Rule 26(g) violation, "because if the lawyer had paused, made a reasonable inquiry, and discovered facts that demonstrated the burdensomeness or excessive cost of the discovery request, he or she should have disclosed them in the objection, as both Rule 33 and 34 responses must state objections with particularity, on pain of waiver." *Id.* (citing *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 359 (D. Md. 2008).

Second, Plaintiff has brought three employment-related claims against AURA. It is well within AURA's purview to request information related to Plaintiff's prior employment to discern the viability of his claims. Further, as mentioned supra, "[d]iscovery rules are liberally construed to effect the just, speedy, and inexpensive resolution of litigation." *Feuerstein v. Home Depot, U.S.A., Inc.*, No. 2:12-cv-1062, 2013 WL 4507612, at *1 (*citing* 8 Charles Alan Wright et al., *Federal Practice and Procedure*, § 2001 at 44). AURA limited its request in time and scope, and thus it is a reasonable and relevant request pursuant to the liberal discovery rules. Moreover, AURA rejects Plaintiff's argument that his past employment is not relevant or an issue in litigation related to his employment discrimination and retaliation claims. To the contrary, courts in this Circuit have found prior employment records relevant and discoverable with regard to a Plaintiff's work history, credibility, and required mitigation of damages. *See, e.g., Robinson v. Jones Lang LaSalle Americas, Inc.*, No. 3:12-CV- 00127-PK, 2012 WL 3763545, at *3 (D. Or. Aug.

11

29, 2012) (holding that details of Plaintiff's prior employment ten years prior to working for defendant may be relevant to Plaintiff's claims*); First v. Kia of El Cajon*, No. 10-CV-536-DMS BGS, 2010 WL 3245778, at *2 (S.D. Cal. Aug. 17, 2010) ("Plaintiff's former employment records are reasonably calculated to lead to discovery of admissible information concerning his ability to find another job, which is relevant to Plaintiff's potential damages."); *Hodgdon v. Northwestern Univ.*, 245 F.R.D. 337 (N.D.Ill.2007) (finding that prior employment records are discoverable because they "could contain information that bears upon [Plaintiff's] credibility."). Though, Plaintiff ultimately provided the name of his former employer and the timeframe of that employment, Plaintiff omitted several aspects of the Interrogatory such as the identity and title of the individuals to whom he reported. Accordingly, Plaintiff is obligated to identify and describe in detail – as these terms are defined in the Definitions section – the specificities of Plaintiff's prior employment.

**Interrogatory No. 9**

(1) **Question Propounded**: Identify each person or entity by whom you have been employed or for whom you performed services <u>since</u> the termination of your employment with AURA, and describe in detail your employment by each identified person or entity, including, but not limited to, the position(s) held, the dates each position was held, the compensation (including salary, bonuses and fringe benefits) received by you, including the date and amount of any raises, the identity and title of the individual(s) to whom you reported, and the date and reason your employment with each person or entity ended, if applicable.

(2) **Answer Received**: OBJECTION: Relevancy and Privacy: Plaintiff is not claiming lost wages in this litigation.

(3) **Supplemental Answer Received**: OBJECTION: Relevancy and Privacy: Furthermore, Plaintiff will seek a protective order to prevent Defendant from interfering with his current employment relationship. Notwithstanding this objection, Plaintiff is employed by Associated Universities, Inc. from September 1, 2020 through the present as a Software Engineer earning $105,000.00 with a sign on bonus of $10,000.00 and medical coverage.

(4) **Why Answer is Deficient**: Plaintiff's relevancy and privacy objections are boilerplate objections without any specificity, which make the objections improper. Further, "privacy" is not an appropriate objection in general; especially, where Plaintiff has initiated a lawsuit involving his employment and ultimate termination. In any event, a stipulated protective order would ease any concerns of "privacy" – though as of the date of this Motion, Plaintiff has not approached AURA to enter into such an

13

agreement.   Plaintiff's boilerplate objections are absolutely ingenuine.   Plaintiff's Complaint explicitly requests lost wages as a form of relief.   Accordingly, AURA is entitled to know Plaintiff's employment status(es), and any and all compensation Plaintiff has received since his termination from AURA, which includes fringe benefits, bonuses, and other financial incentives which Plaintiff has not identified. In particular, as is known by all parties, Plaintiff continued to reside in *free* housing in Chile well after his termination from AURA. As such, any such current, potential, and future compensations from other employers is relevant and goes to the heart of AURA's defenses.

**Interrogatory No. 10**

(1) **Question Propounded**: Describe in detail all efforts by you to obtain any other employment and/or other work or compensable services since your employment with AURA ended, including, but not limited to, the identity and address of any employer, employment agency, or other person that you contacted or that contacted you regarding potential employment and/or other work or compensable services, the nature and the date of each such contact, the nature of the employment and/or other work or compensable services sought in each such contact, (including the position and compensation) the substance of all communications regarding potential employment and/or other work or compensable services and the results of each such contact, including whether a job offer was extended, a description of the offer, including the date the offer was extended and the position and compensation offered, and the reason(s) why you declined such offer.

(2) **Answer Received**: OBJECTION: Relevancy and Privacy: Plaintiff is not claiming lost wages in this litigation.

(3) **Supplemental Answer Received**: Plaintiff applied for approximately ten jobs and was offered a position with Argonne National Laboratory as a Controls System Engineer. However, Plaintiff accepted his current position prior to the job offer with Argonne.

(4) **Why Answer is Deficient**: Plaintiff's relevancy and privacy objections are boilerplate objections without any specificity, which make the objections improper. Further, "privacy" is not an appropriate objection in general; especially, where Plaintiff has initiated a lawsuit involving his employment and ultimate termination. In any event, a stipulated protective order would ease any concerns of "privacy" – though as of the date of this Motion, Plaintiff has not approached AURA to enter into such an agreement. Plaintiff's boilerplate

15

objections are absolutely ingenuine. Plaintiff's Complaint explicitly requests lost wages as a form of relief. Lastly, Plaintiff mentions that he applied to ten jobs, but only provides the names of two places of employment without identifying in detail the remaining eight. Accordingly, AURA is entitled to know Plaintiff's attempts to gain employment.

**Interrogatory No. 11**

(1) **Question Propounded**: Describe in detail all income or other earnings, including, but not limited to, all salaries, bonuses, and fringe benefits, which you have been offered, been promised, or received from any and all sources, including, but not limited to, AURA, from the start of your employment with AURA until the present, and state the precise amount, date, nature and source of all such income or earnings.

(2) **Answer Received**: OBJECTION: Relevancy and Privacy: Plaintiff is not claiming lost wages in this litigation. With respect to Plaintiff's employment with AURA, Defendant has knowledge of Plaintiff's compensation during his employment and refers to his personnel and payroll records.

(3) **Why Answer is Deficient**: Plaintiff's relevancy and privacy objections are boilerplate objections without any specificity, which make the objections improper. Further, "privacy" is not an appropriate objection in general; especially, where Plaintiff has initiated a lawsuit involving his employment and ultimate termination. In any event, a stipulated protective order would ease any concerns of "privacy" – though as of the date of this Motion, Plaintiff has not approached AURA to enter into such an agreement. Plaintiff's boilerplate objections are absolutely ingenuine. Plaintiff's Complaint explicitly requests lost wages as a form of relief. Accordingly, AURA is entitled to know any and all compensation Plaintiff has received since his termination from AURA. In particular, as is known by all parties, Plaintiff continued to reside in *free* housing in Chile well after his termination from AURA. As such, any such current, potential, and future compensations from other employers is relevant and goes to the heart of AURA's defenses.

**Interrogatory No. 12**

(1) **Question Propounded**: If you have been examined by, treated by, diagnosed by or have otherwise consulted with any physician, psychologist, psychiatrist, hospital, nurse, counselor, social worker, therapist or other health care provider for a reason arising out of, or related in any way to, your employment with AURA or any of the conduct alleged in your Complaint, then identify each such health care provider. For each such health care provider, describe in detail your contact and communication with the health care provider, including the dates of each consultation, a description of any complaint, examination results, disability slips, diagnosis, treatment, prescription, medication and prognosis for each such consultation, and the identity of each report, note or other document generated as a result of such consultation, contact or communication.

(2) **Answer Received**: ███████████. Plaintiff has requested the treatment records and billing statements.

(3) **Supplemental Answer Received**: Objection: Overbroad, Relevance, and Privacy. Notwithstanding this objection, ████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████

As stated in the filings, Plaintiff suffered from diabetes and contracted a severe foot infection where they feared they may have to amputate his toes. He was treated at Clinica Elqui, Hospital Regional de Coquimbo, and Fuerzas Aeras Chilenas Hospital (Chilean Air Force Hospital) to heal his foot wound and infection. Plaintiff has requested the treatment records and billing statements.



(4) **Why Answer is Deficient**: Plaintiff fails to "identify" and "describe in detail" as required pursuant to the Definitions section.  AURA is left with only a name to then discern the "who"; "what"; "when"; "why"; and "where" as it relates to this individual. Further, Plaintiff's request for records does not halt his discovery obligations to provide in his responses all the details as requested, which presumably are in his possession as he is the patient. At the very least, Plaintiff is to provide a description of this individual's occupation, where the individual is located, the scope of the individual's specialty, when Plaintiff sought the individual's services, etc. AURA is handcuffed from conducting its own investigation of the individual as Plaintiff has provided <u>zero</u> details to identify the individual. Further, based on Plaintiff's Response to Interrogatory No. 12, it appears Plaintiff has seen no other medical professional for any potential ailments – physical and/or mental.  The suggestion that Plaintiff has not spoken to any other medical providers while employed at AURA and after his termination while alleging medical disabilities and emotional distress strains credulity. Most notably, Plaintiff has returned to the United

States and based on his Answer, AURA is to presume he has not seen a single United Stated physician for the alleged disabilities he claims he has.

AURA is simply trying to identify the factual underpinnings of Plaintiff's emotional distress, medical disability, and various damages claims, which Plaintiff bears the burden of articulating and supporting. This is a legitimate use of discovery requests. *See Summit Recovery v. Credit Card Reseller*, No. 08-5273, 2009 WL 10678533, at *3 (D. Minn. Sept. 3, 2009) (compelling discovery, the "purpose" of which "is to allow defendants to obtain the factual basis behind the allegations made by plaintiff in its Complaint.").

**Interrogatory No. 13**

(1) **Question Propounded**: With respect to each category of damages sought in this action, separately state and itemize the precise amount of damages claimed to have been suffered by you, and describe in detail the factual basis and method of computation used to determine that amount, and identify all documents that support, were relied upon, or otherwise relate to such computation.

(2) **Answer Received**: Plaintiff is seeking the maximum recovery for compensatory and punitive damages allowed under the ADAA and ADEA.

(3) **Supplemental Answer Received**: Objection on the basis of being overly broad, unduly burdensome and attorney work product. Notwithstanding the objection, Plaintiff is seeking the maximum recovery for compensatory, liquidated, and punitive damages allowed under the ADAAA and ADEA. Plaintiff intended to work with Defendant 2027 and seeks an award of back pay and front pay. The cost of living was significantly less than in the United States, less taxation in Chile and education for their children is more expensive in the United States. Relocation expenses after his termination including cost difference for transportation of family pet and sale of automobile. Plaintiff's treatment responsive to Interrogatory No. 12 supports his claims for compensatory damages in addition to Plaintiff's testimony and his spouse. Plaintiff seeks all available damages including attorney fees, costs, interest and offset for tax consequences. Plaintiff will supplement with an expert report consistent with the Court's Scheduling Order.

(4) **Why Answer if Deficient**: AURA specifically requested that Plaintiff "separately state and itemize the precise amount of damages" yet the entirety of Plaintiff's impartial response is boiled down to seventeen words. Plaintiff has provided no additional insight or

direction as to his requested monetary damages. Unsurprisingly, Plaintiff yet again ignores AURA's request he "describe in detail" and "identify" documents that support his computations for the monetary damages. The purpose of discovery is to allow all parties equal access to relevant information. *Sec'y of Lab., U.S. Dep't of Lab. v. Az. Logistics Inc.*, No. CV-16-04499- PHX-DLR, 2022 WL 279585, at *2 (D. Ariz. Jan. 31, 2022). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor,* 329 U.S. 495, 507 (1947); *see also Oakes v. Halverson Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998). ("[T]he purpose of discovery is to remove surprise from trial preparation[.]"). Here, Plaintiff is required to provide notice to AURA of the expansiveness of any potential damages Plaintiff seeks. More troublesome with this Answer is that Plaintiff claims he is seeking an award of back pay and front pay, when two Interrogatories prior, Plaintiff states he is not seeking back pay. AURA, again, is left with more questions than answers. Plaintiff must supplement ATI No. 13 to separately state and itemize the precise amount of damages alleged *and* identify and describe in detail the factual basis and computation of his damages as they relate to the allegations in his Complaint, including any documents that were relied upon in any such computation.

**Interrogatory No. 14**

(1) **Question Propounded**: Describe in detail any and all performance counseling or disciplinary actions you received during the course of your employment at AURA. Your answer should include, but not be limited to, any informal counseling (verbal or written) you received from a supervisor, performance improvement plans, disciplinary actions, etc.

(2) **Answer Received**: See Plaintiff's Responses to Requests for Production of Documents. Additional documents may be found in Plaintiff's personnel file with Defendant pursuant to F.R.C.P. 33(d).

(3) **Supplemental Answer Received**: Plaintiff received successful annual performance reviews, performance based bonuses and annual salary increases every year of his employment except the last. He was initially hired to work on a contracted job and was then asked to take a permanent position. Specifically, he was praised for his "excellent trouble-shooting skills." He was also praised for his ability to address complications, solve hard problems, communicate with his team, his dedication, and his commitment. In May of 2019 the Plaintiff was awarded AURA'S Outstanding Achievement Award for Technology and Innovation.

Upon his return to work after a two month leave due to serious health complications of diabetes, the Plaintiff received negative feedback for the first time while at AURA. Despite winning an award three months prior, Plaintiff's review cited that he "needed improvement." Shortly after his unexpected negative review, he was put on a 60 day performance plan where he would be supervised and be working in a different capacity. The plan began on March 25, 2020 and he was terminated on May 25, 2020. All reviews, critiques, and employment actions were conducted by Arturo Nunez who only found

problems with his work after his leave due to serious medical issues. See Plaintiff's Responses to Requests for Production of Documents. Additional documents may be found in Plaintiff's personnel file with Defendant pursuant to F.R.C.P. 33(d).

(4) **Why Answer is Deficient**: Plaintiff generally relies on the Production, which in itself is incomplete.  The Production contains only: (1) a selective and limited assortment of Plaintiff's employment file such as his offer letter, termination letter, and a document entitled "Mike's Milestones"; (2) Plaintiff's EEOC Charge of Discrimination against AURA, Plaintiff's EEOC statement of position with exhibits, AURA's statement of position with exhibits, and EEOC's dismissal and notice of rights; (3) one pay period pay statement from AURA; (4) W-2's from 2014 through 2020; (4) a selective and limited assortment of e-mails between Plaintiff and AURA-affiliated individuals; and, (5) two job postings (collectively the "Limited Documents").  The Production does not provide a description of any and all performance counseling or disciplinary actions Plaintiff received during the course of his employment at AURA.

**Interrogatory No. 15**

(1) **Question Propounded**: From the date you began working at AURA, until your last date of work at AURA, describe in detail your job assignment, including a description of your duties and responsibilities, to whom you reported, the location and area in which you worked, and the salary and other compensation and benefits that you received.

(2) **Answer Received**: See Plaintiff's Responses to Requests for Production of Documents. Additional documents may be found in Plaintiff's personnel file with Defendant pursuant to F.R.C.P. 33(d).

(3) **Supplemental Answer Received**: Plaintiff worked in Chile for Gemini, a division of AURA. The Plaintiff was originally hired to work on a contract for a 2 year time period, but was offered a permanent position in 2016 as a Real Time Software Engineer. His duties included general software operations and support for Real Time software development. During his employment, he was always to report to Arturo Nunez. See Plaintiff's Responses to Requests for Production of Documents for the amount of compensation. Additional documents may be found in Plaintiff's personnel file with Defendant pursuant to F.R.C.P. 33(d).

(4) **Why Answer is Deficient**: Plaintiff relies on the Production, which in itself is incomplete. The Production contains only the Limited Documents.  The Production does not provide insight into Plaintiff's duties and responsibilities while employed at AURA.

**Interrogatory No. 16**

(1) **Question Propounded**: Describe in detail the basis for your allegation that AURA's attitude towards you changed in December 2019, including that you were singled out and subjected to "harsher criticism," as you allege in Paragraph 13 of your Complaint. Your answer should include, but not be limited to, your definition of "attitude" and "criticism", an explanation for how it "changed", and an explanation for how allegedly AURA's change in attitude resulted in harsher criticism.

(2) **Answer Received**: See Plaintiff's Responses to Requests for Production of Documents. Additional documents may be found in the EEOC response and Plaintiff's personnel file with Defendant pursuant to F.R.C.P. 33(d).

(3) **Supplemental Answer Received**: Plaintiff only received criticism after taking a necessary medical leave of absence, for which he was approved. A change of attitude could be seen in that he went from winning an award for "outstanding" work to being criticized several months later for "needing improvement."

- 2019 PAR signed off as completed by Mr. Nuñez on Feb 26, 2020, which was procedurally flawed and unusually harshly and otherwise anomalously graded;

- Hiring process begun in late February or early March 2020 to fill advertised job positions for Real Time Software Engineers;

- 60-day Warning issued 25 Mar 2020, which was shortly after employees had been sent home to work remotely and telescope operations shut down due to the global COVID-19 pandemic. The Warning was an unexpected surprise given that there had been no discussion of serious performance problems for several months, other

than the flawed 2019 PAR which was discussed February 5, 2020 and which was referenced as rationale for issuance of the Warning;

- AURA's failure to suspend the 60 Day Warning as the true dimensions of the global crisis and its effect on work, families and society became more and more evident;

- AURA's decision to terminate Plaintiff's employment without discussing the outcomes of the 60 Day Warning with him, or allow him to give feedback on the findings, or even to share with him what the findings were;

- The failure of AURA to consider placing Plaintiff in a different role within the observatory or in a different position in some other department or other project under AURA's management instead of terminating him;

- The failure of anyone from AURA HR or any other department to approach Plaintiff at any time to find out Plaintiff's perspective on the disciplinary actions, whether there was any conflict with his boss or anyone else, instead resulting in an predetermined termination;

- The hiring of three younger software engineers in May 2020 shortly before Plaintiff was informed that he would be terminated, to work on the very same software project that Plaintiff was already working on.

See Plaintiff's Responses to Requests for Production of Documents. Additional documents may be found in the EEOC response and Plaintiff's personnel file with Defendant pursuant to F.R.C.P. 33(d).

(4) **Why Answer is Deficient**: This Interrogatory requests *details* related to Plaintiff's allegations set forth in Paragraph 13 of his Complaint <u>and</u> Plaintiff's definition of "attitude"

27

and "criticism". Plaintiff provides no response to the request that he provide a definition of the two terms that *he* elected to use in his Complaint.

**Interrogatory No. 17**

(1) **Question Propounded**: Identify all the new employees in their 20s and 30s that you allege AURA hired during the sixty-day period beginning March 25, 2020, and describe in detail the basis for your allegation that these individuals were hired to perform the same duties as you, as you allege in Paragraph 17 of your Complaint. Your answer should include, but not be limited to, the name of each individual, their age (as you estimate), the date they were hired, who you believe hired them, and why you believe they were hired to do your work. Additionally, your definition of "little relevant experience" and "pre-ordained", the names of the individual(s), the date each individual was hired including any details that provided you the belief that these individuals had little relevant experience.

(2) **Answer Received**:

Tiffany Shreves May 18, 2020
Emma Kurz on or about May 4, 2020
Hawi Stecher on or about May 4, 2020

(3) **Supplemental Answer Received**:

Tiffany Shreves May 18, 2020
Emma Kurz on or about May 4, 2020
Hawi Stecher on or about May 4, 2020

All new hired joined AURA within weeks prior to Plaintiff's termination. As for their job duties and hiring information, documents can be found in Aura's personnel files.

(4) **Why Answer is Deficient**: Plaintiff continues to ignore defined terms such as "identify" and "describe in detail" in asking him to explain the basis for his allegations. Further, AURA requested that Plaintiff provide definitions as it relates to his allegations such as "little relevant experience" and "pre-ordained". Nonetheless, all Plaintiff provides are three

individuals' names and three dates, wherein AURA is to make presumptions and string these answers together. Moreover, Plaintiff has failed to provide an estimation of these three individuals' ages.

**Interrogatory No. 18**

(1) **Question Propounded**: Describe the work that you were performing at AURA beginning March 25, 2020, that you allege others were hired to perform, when that work was reassigned, and who reassigned that work. Your answer should include a detailed description of each assignment, when such work was reassigned, to whom it was reassigned, and by whom it was reassigned.

(2) **Answer Received**: See Plaintiff's Responses to Requests for Production of Documents. Additional documents may be found in the EEOC file pursuant to F.R.C.P. 33(d).

(3) **Supplemental Answer Received**: Mr. Nunez was in charge of assigning work for Plaintiff and his co-workers. Plaintiff was performing his duties for which he was hired, ie. software development for the telescope control systems. See Plaintiff's Responses to Requests for Production of Documents. Additional documents may be found in the EEOC file pursuant to F.R.C.P. 33(d).

(4) **Why Answer is Deficient**: Plaintiff relies on the Production, which in itself is incomplete. The Production contains only the Limited Documents. The Production does not describe the work Plaintiff was performing, when that work was reassigned, by whom it was reassigned, and who it was reassigned to as alleged in his Complaint. AURA is simply trying to identify the factual underpinnings of Plaintiff's various claims.

**Interrogatory No. 19**

(1) **Question Propounded**: Describe in detail your explanation for why you were unable to complete the tasks assigned to you on March 25, 2020, as a result of the COVID-19 pandemic. Your answer should include, but not be limited to, the task assigned to you, the deadline for completing the task, and any and all reasons why you were unable to complete that task by the assigned deadline.

(2) **Answer Received**: See Plaintiff's Responses to Requests for Production of Documents. Additional documents may be found in the EEOC file pursuant to F.R.C.P. 33(d).

(3) **Supplemental Answer Received**: The Software Team had recently made special efforts to clear out all the outstanding Software Fault Reports, and either resolve them, close them out as unresolvable, or otherwise categorize them as *"Long Term Fix"* to be put on the back burner and re-addressed at some future time. There simply were very few Fault Reports to address given the shutdown status of the Telescope, and the few that did come up were handled in a timely manner. Mr. Nunez's comment was gratuitous and misleading. Further, though Mr. Nunez,s comment was specifically in regard to Fault Reports, it should be noted that in the One-on-One notes dated April 15, 2020 Mr. Nunez remarked, *Ops support: Ongoing, Mike taking the shift every other week. Good progress here. Mike has been more proactive in taking care of operational problems and has participated more in discussions among the team.*

The "Milestones" task was tacked on to the end of a longer paragraph describing a different task.

Mr. Nunez did not inquire about Plaintiff' s progress on this particular task during the April 1one-on-one meeting.

The next one-on-one meeting did not happen until April 15, more than a week after the deadline.

The April 7 deadline was too aggressive to formulate *"precise milestones"* for 7 weeks into the future, especially given the Project and its tasks had not been defined yet.

No one else on the team was asked to produce such a "*precise milestones*" document, so it seems Plaintiff was evaluated for (and fired on the basis of) performance on an extra-ordinary task that is not normally part of the job rather than on performance with regard to normal tasks.

Gemini Deputy Director Mr. Roe's statement in the email of March 17 should have been considered, "During this time we expect you to telework from home as possible, the same as we are asking of all of our other staff who are now teleworking." The standard assigned to Plaintiff was different than for others under the stressful and deteriorating work conditions.

In section 2.3 of the Report *("Ownership and Priority Management")* covers the results of the following task described in the Final Warning: *...you will implement dedicated VII servers as indicated in REL-3582. I expect you to clarify requirements for this task by April 7, propose and present an architecture (including a verification plan) by April 14 and have the system ready by the end of April 2020.*

Mr. Nunez, commenting on our April 14 meeting in the Report writes, I noticed that there was no test plan to ensure existing visitor instruments at GN and GS could use this new system...

However, Plaintiff had indeed included a test plan appropriate to the task which was nearly identical to the verification procedure used previously by a different engineer

(Angelic Ebbers) to do the same task. In the documentation Plaintiff presented to Mr.

Nunez on April 14, he had given the following test/verification plan:





The above established that the VII server is installed and running properly.

Further, Mr. Nunez states that on May 13, Plaintiff *"still didn't have plans on what modifications were needed on every visitor instrument to complete this work.* Modifications to visitor instruments were simply not discussed, as absolutely none were needed. The only "modification" that would have been needed on any visitor instrument would be to connect to the new server instead of the old one, and the Science Operations staff in charge of overseeing the operations of the visiting instruments had ensured me that they would inform the operators of these instruments of the necessary change at the appropriate time.

See Plaintiff's Responses to Requests for Production of Documents. Additional documents may be found in the EEOC file pursuant to F.R.C.P. 33(d).

(4) **Why Answer is Deficient**: Plaintiff relies on the Production, which in itself is incomplete. The Production contains only the Limited Documents.  The Production is unresponsive as to Plaintiff's reasons he was unable to compete various (unknown) tasks.  Further, Plaintiff ignores the defined terms "describe in detail" in asking to explain the basis for his allegations.

**Interrogatory No. 20**

(1) **Question Propounded**: Describe in detail the basis for your allegations that you were terminated as a result of your age, as you allege in Paragraph 19 of your Complaint. Your answer should include, but not be limited to, (1) any statements made about your age, who made those statements, when, and in what context; and (2) any actions taken by AURA prior to your termination that you allege were based on your age.

(2) **Answer Received**: See Plaintiff's Responses to Requests for Production of Documents. Additional documents may be found in the EEOC file pursuant to F.R.C.P. 33(d).

(3) **Supplemental Answer Received**: Actions taken by AURA prior to my termination due to age include the following:

- AURA's issuance of the Performance Improvement Plan in 2018, and subsequent failure to evaluate its outcomes on the basis of the criteria included within the PIP;

- AURA's extension of the 2018 PIP to June 30th 2019 and subsequent failure to discuss with Plaintiff or provide to him the outcomes and conclusions of the PIP extension at the end of the probationary period, or to take any additional disciplinary action at that time;

- Employment opportunity advertisement, posted 21 October 2019 for Real Time Software Engineer to work in either Chile or Hawaii;

- 2019 PAR signed off as completed by Mr. Nuñez on Feb 26, 2020, which was procedurally flawed and unusually harshly and otherwise anomalously graded;

- Hiring process begun in late February or early March 2020 to fill advertised job positions for Real Time Software Engineers;

- 60-day Warning issued 25 Mar 2020, which was shortly after employees had been sent home to work remotely and telescope operations shut down due to the global COVID-19 pandemic. The Warning was an unexpected surprise given that there had been no discussion of serious performance problems for several months, other than the flawed 2019 PAR which was discussed February 5, 2020 and which was referenced as rationale for issuance of the Warning;

- AURA's failure to suspend the 60 Day Warning as the true dimensions of the global crisis and its effect on work, families and society became more and more evident;

- AURA's decision to terminate Plaintiff's employment without discussing the outcomes of the 60 Day Warning with him, or allow him to give feedback on the findings, or even to share with him what the findings were;

- The failure of AURA to consider placing Plaintiff in a different role within the observatory or in a different position in some other department or other project und The failure of anyone from AURA HR or any other department to approach Plaintiff at any time to find out Plaintiff's perspective on the disciplinary actions, whether there was a conflict with his boss or anyone else, instead resulting in a predetermined termination;

- The hiring of three younger software engineers in May 2020 shortly before Plaintiff was informed that he would be terminated, to work on the very same software project that Plaintiff was already working on.

See Plaintiff's Responses to Requests for Production of Documents. Additional documents may be found in the EEOC file Pursuant to F.R. C. P. 33(d).

37

(4) **Why Answer is Deficient**: This Interrogatory requests *details* related to Plaintiff's allegations set forth in Paragraph 19 of his Complaint, yet Plaintiff relies on the Production, which in itself is not complete. The Production contains only the Limited Documents. Further, the list of Plaintiff's assertions do not directly answer AURA's request; specifically, there are no assertions of statements made about Plaintiffs age or actions taken by AURA because of his age. The Production fails to include the detailed basis for which Plaintiff alleges he was terminated as a result of his age.

**Interrogatory No. 21**

(1) **Question Propounded**: Describe in detail your allegation that you have a disability as that term is defined by the Americans with Disabilities Act ("ADA"). Your answer should include, but not be limited to, a description of your disability, when you first developed said medical condition, and all treatment you have received for that condition from the time you were employed by AURA to present.

(2) **Answer Received**: Objection to the extent this interrogatory asks for a legal conclusion. Notwithstanding this objection, diabetes is a medical condition that substantially limits one or more major life activities including the endocrine system. See Plaintiff's Responses to Requests for Production of Documents.

(3) **Supplemental Answer Received**: Objection to the extent this interrogatory asks for a legal conclusion. Notwithstanding this objection, diabetes is a medical condition that substantially limits one or more major life activities including the endocrine system. Plaintiff suffered from diabetes and contracted a severe foot infection where they feared they may have to amputate his toes. █████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████

███████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████

(4) **Why Answer is Deficient**: Plaintiff has chosen to ignore defined terms such as "identify" and "describe in detail" as it relates to his alleged disability. Rather, Plaintiff provides a generic definition of diabetes. It is worth noting to Plaintiff the obvious that there are multiple types of diabetes, various symptoms based on the specific individual, various impediments or lack thereof, different treatment plans based on the type of diabetes and the medical history of the diabetic individual, among many other conditions and treatments. Yet, Plaintiff's response is silent on every single one of these few plausible inquiries that are within the scope of the Interrogatory.  Plaintiff's answer provides no detail as to the dates of his hospital visits related to his diabetes and endocrinologist. Lastly, Plaintiff points AURA in the direction of his Production – which has no specific information about his diabetes, or any medical issues, to provide any details as AURA requested.

## Interrogatory No. 22

(1) **Question Propounded**: Describe in detail the basis for your allegations that you were terminated as a result of the disability you described in your answer to Interrogatory No. 19. Your answer should include, but not be limited to, (1) when you first notified AURA about your disability and whom you notified; (2) any statements made about your disability, who made those statements, when, and in what context; and (3) any actions taken by AURA prior to your termination that you allege were based on your disability.

(2) **Answer Received**: See Plaintiff's Responses to Requests for Production of Documents. Additional documents may be found in the EEOC file and Plaintiff's personnel file with Defendant pursuant to F.R.C.P. 33(d).

(3) **Supplemental Answer Received**: Vivian Westfall discussed Plaintiff's disability with Evelyn Cortes, human resource generalist at AURA, when she arrived in Chile in 2014 when she requested assistance with obtaining medical appointments for Plaintiff's medical condition.

Plaintiff's diabetes was common knowledge as he attempted to manage it in a small software group context. Plaintiff told Arturo Nunez several times that he had diabetes. ███

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████

Email from Evelyn Cortes cc to Yura Monsanto dated October 24, 2019 stated that she received the certificate from ████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████   ████████████████████

███████████████████████████████████████████

████████████████████

See Plaintiff's Responses to Requests for Production of Documents. Additional documents may be found in the EEOC file and Plaintiff's personnel file with Defendant pursuant to F.R.C.P. 33(d).

(4) **Why Answer is Deficient**: Plaintiff relies on the Production, which in itself is incomplete. The Production contains only the Limited Documents. The Production is unresponsive as to Plaintiff's reasons he was unable to compete various (unknown) tasks. Further, Plaintiff ignores the defined terms "describe in detail" in asking to explain the basis for his allegations. Specifically, Plaintiff provides a bulleted list of events that provide very little detail and requires AURA to imagine the context or expend time and resources to investigate the context when Plaintiff is clearly in possession of the responsive answer.

**Interrogatory No. 23**

(1) **Question Propounded**: Describe any and all communications you had with anyone at AURA regarding AURA's actions as they are alleged in your Complaint. Your answer should include the full name, address, and telephone number of each individual in which you engaged in such communication; the date(s) of each such communication; a detailed description of each communication; the method(s) of each communication (i.e., in-person, telephone call, e-mail); and the purpose of each communication.

(2) **Answer Received**: See Plaintiff's Responses to Requests for Production of Documents. Additional documents may be found in the EEOC file and Plaintiff's personnel file with Defendant pursuant to F.R.C.P. 33(d).

(3) **Supplemental Answer Received**: Objection: Overbroad. Notwithstanding this objection, Plaintiff recalls communications concerning his work duties, health including diabetes, the global pandemic, and the living and working conditions in Chile. See Answer to Interrogatory No. 1. Plaintiff's Responses to Requests for Production of Documents. Additional documents may be found in the EEOC file and Plaintiff's personnel file with Defendant pursuant to F.R.C.P. 33(d).

(4) **Why Answer is Deficient**: Plaintiff generally relies on the Production, which in itself is incomplete. The Production contains only the Limited Documents. Notably, the Production includes several duplicates of W-2s and identical copies of the few communications. The majority of these documents do not support his allegations and further, provide only a partial glimpse of communications between Plaintiff and others as they relate to the Complaint. Further, in response to Interrogatory No. 1, Plaintiff lists

seventeen (17) individuals – some being AURA employees, who Plaintiff claims possess discoverable information. *See* Pl.'s Resp. to Def.'s Interrog. No. 1. Then, in response to this Interrogatory, Plaintiff does not identify a single communication Plaintiff had with anyone at AURA regarding AURA's actions as they are alleged in his Complaint. Lastly, Plaintiff "recalls" communications but then provides no detail or substantive information. Again, these illusory responses would require AURA to go on a wild goose chase hoping to discover on its own what Plaintiff "recalls." As explained, AURA is entitled to have the same facts and understanding as Plaintiff when it relates to his Complaint and allegations against AURA for the purpose of preparing its defenses.

**Interrogatory No. 24**

(1) **Question Propounded**: Identify all documents (including ESI) that support or otherwise relate to your claims that AURA, or any employee or agent thereof, harassed or discriminated against you based upon your age and/or health, and provide a complete description of each such document, including the document's date, author, addressee, type (e.g., letter, memorandum, note, email, chart, etc.), source, and name and address of its source or present custodian

(2) **Answer Received**: See Plaintiff's Responses to Requests for Production of Documents. Additional documents may be found in Plaintiff's personnel file with Defendant pursuant to F.R.C.P. 33(d).

(3) **Supplemental Answer Received**: Objection: Overbroad. Without waiving the objection, see Plaintiff's Responses to Requests for Production of Documents including the posting of job positions during his medical leave and/or PIP and subsequent hiring of three younger employees with the same job title. Additional documents may be found in Plaintiff's personnel file with Defendant pursuant to F.R.C.P. 33(d).

(4) **Why Answer is Deficient**: Plaintiff has chosen to ignore defined terms such as "identify". Plaintiff relies on the Production, which in itself is incomplete. The Production only contains the Limited Documents which are unresponsive. Further, Plaintiff admits there are responsive documents, but he does not indicate which documents are responsive to the request, so AURA cannot discern which documents relate to this request.